IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>    vs.<br><br>LESLIE GRABER,<br><br>                   Defendant. | 8:18CR304<br><br>FINDINGS AND RECOMMENDATION |

      This matter is before the Court on the Motion to Suppress Statements and Evidence and Request for Hearing (Filing No. 15) filed by Defendant, Leslie Graber. Defendant filed a brief (Filing No. 16) in support of the motion and the government filed a brief (Filing No. 20) in opposition.

      The Court held evidentiary hearings on the motion on February 26, 2019, and March 21, 2019. Defendant was present with his attorney, Richard McWilliams. The government was represented by Assistant United States Attorney, Matthew Lierman. Bellevue Police Detective Ryan Roskey, United States Probation and Pretrial Services Officer Avidan Perez, Nebraska State Probation Officer Aimee Assman, and Omaha Police Officer Adam Kruse testified on behalf of the government. The Court received into evidence, without objection, Exhibits 1-14 offered by the government, and Exhibit 105 offered by Defendant. A transcript (TR.) of the hearings was prepared and filed on April 22, 2019. (Filing No. 51). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be denied.

## BACKGROUND

      On March 6, 2018, Defendant began a nine-month term of post-release supervision after serving a term of incarceration for a felony conviction in Douglas County, Nebraska. (TR. 43-44; Ex. 3). Defendant's Order of Post-Release Supervision required him to "[r]eport as directed by the Court or probation officer and permit the probation officer to visit the defendant at all times and places." Defendant was also ordered to "[s]ubmit to random searches and seizure of [his]

person, premises, or vehicle upon request of a probation officer or a law enforcement officer who has been authorized and directed by the probation officer." (Ex. 3). Officer Perez was Defendant's post-release supervision probation officer.[1] (TR. 40). According to Officer Perez, as of June 20, 2018, Defendant was placed in "absconder status" after failing to provide Officer Perez with a current address and after having no contact with Officer Perez for approximately thirty days. As a result, Officer Perez had submitted the matter of a revocation to the state court. (TR. 44, 62, 66-67).

Sometime around June 21, 2018, Bellevue Police officers came into contact with Defendant while canvassing a neighborhood during a separate, unrelated investigation into a stolen vehicle. Detective Roskey learned from that investigation that Defendant was on state probation and that Officer Perez was his supervising probation officer. Detective Roskey also learned that Defendant was associated with a certain white Buick Regal registered to a "Bobbie Jo Adkins." Detective Roskey contacted Officer Perez on June 26, 2018, and Officer Perez informed Detective Roskey that Defendant had absconded from post-release supervision and asked Detective Roskey to detain Defendant if he was located. (TR. 12-14, 24, 39-41, 44-47).

On the morning of June 27, 2018, Detective Roskey and members of the Omaha fugitive task force convened at a motel off of 78th and Dodge Streets to locate a fugitive with an arrest warrant. (TR. 10-12, 35). During Detective Roskey's surveillance of the motel, he happened to observe Defendant's white Buick Regal parked in the parking lot near room 119. (TR. 12-13, 161-162). Pursuant to a tip from a reliable confidential informant, Detective Roskey and the fugitive task force knocked on room 119's door, believing that the fugitive was located inside that room. (TR. 35-36, 151-153). The three occupants of the room, including Defendant, complied with the officers' instructions to step outside of the room and were handcuffed. (TR. 15-16, 30). Detective Roskey called Officer Perez to let him know Defendant had been located. Officer Perez asked Detective Roskey to detain Defendant until Officer Perez arrived. (TR. 17-18, 48).

Officer Perez and two colleagues, including Officer Assman, arrived approximately fifteen to twenty-five minutes later. (TR. 18, 49). Officer Perez asked Defendant questions about his failure to call and asked whether he had been driving the Buick and staying in room 119.

---

[1] Officer Perez was employed by the State of Nebraska as a probation officer during all pertinent times in this matter.

2

Defendant admitted to driving the Buick and agreed to Officer Perez's request to search it. (TR. 49-50, 53-54, 74, 87). Officer Perez also asked Defendant and the other room occupants for consent to search room 119, and all parties agreed. (TR. 50-51). Defendant was present for both searches, although he remained handcuffed throughout. (TR. 55). Officer Assman testified that, to the best of her recollection, the probation officers searched the motel room first, followed by the Buick. (TR. 88). During the probation officers' search of room 119, they found white pills, marijuana, and a substance that appeared to be methamphetamine. (TR. 52). The probation officers recovered a handgun in a toolbox in the Buick. (TR. 57, 91, 101-102). Officer Perez asked Defendant questions about the recovered items and Defendant made certain incriminating responses regarding the handgun. (TR. 76-78).

Defendant was transported to Omaha Police Department Central Headquarters and was placed in an interview room for questioning. (TR. 102). Defendant was read his *Miranda* rights, signed a written waiver (Ex. 2), and made incriminating statements in response to Officer Kruse's questioning. (TR. 106-107). On October 17, 2019, Defendant was indicted in this Court with one count of being a felon in possession of a handgun, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2).

Defendant filed the instant motion seeking suppression of any evidence and statements derived from the warrantless searches of the motel room and the Buick. (Filing No. 15). At the close of the suppression hearing held on February 26, 2019, Defendant raised additional arguments not addressed in his opening motion or brief. Specifically, Defendant additionally argued that Detective Roskey did not have reasonable suspicion to initially detain Defendant, and that any evidence and statements obtained as a result should be suppressed as fruit of the unlawful detention. Defendant also contends that Officer Perez conducted a custodial interrogation of Defendant without advising him of his *Miranda* rights. (TR. 133-134). The government asserts that Defendant was lawfully detained because he was in "absconding status" under a state conviction post-release supervision order, that the searches were conducted after receiving consent, and that Defendant's statements were not the result of any unlawful police conduct.

## ANALYSIS

### I. Defendant's Detention

Defendant argues that Detective Roskey did not have any basis to initially detain Defendant. The undersigned magistrate judge disagrees. Defendant was akin to a state probationer subject to certain terms and conditions of supervision, including a requirement that he submit to random searches and seizures of his person and vehicle. (Ex. 3). Probationers have limited expectations of privacy. See *United States v. Knights*, 534 U.S. 112, 121 (2001); *United States v. Rodriquez*, 829 F.3d 960, 961 (8th Cir. 2016); *United States v. McCoy*, 847 F.3d 601, 605 (8th Cir. 2017). Broad search conditions imposed on a probationer for prior criminal activity "significantly diminishe[s] [a probationer's] reasonable expectation of privacy" and serves the state's "legitimate interests in preventing, detecting, and punishing additional criminal activity." *Rodriguez*, 829 F.3d at 962 (quoting *Knights*, 534 U.S. at 120-21). Accordingly, "[g]iven that balance of interests, the Fourth Amendment require[s] no more than reasonable suspicion" that a probationer is "engaging in criminal activity or otherwise violating the terms of his probation" to justify a warrantless search. *Id.* (quoting *Knights*, 534 U.S. at 121-22)(internal quotation marks omitted); *accord United States v. Brown*, 346 F.3d 808, 811 (8th Cir. 2003)("[W]hen a probationer is subject to a probationary search condition, the Fourth Amendment permits an officer to search pursuant to that condition without a warrant based only upon that officer's reasonable suspicion that the probationer is violating his probation's terms."). Although these prior cases primarily address the validity of warrantless searches pursuant to a condition of probation, the same reasoning applies to the seizure of Defendant's person pursuant to a similar condition of supervision.

In this case, Defendant was serving a period of post-release supervision imposed as part of his punishment for his Nebraska felony conviction. As a condition of his supervision, Defendant expressly consented to "[s]ubmit to random searches *and seizure of [his] person*, premises, or vehicle upon request of a probation officer or a law enforcement officer who has been authorized and directed by the probation officer." (Ex. 3)(emphasis added). At the time Defendant was detained at the motel, Officer Perez had reasonable suspicion to believe that Defendant was violating his terms of supervision. See *Rodriguez*, 829 F.3d at 962 (finding the Fourth Amendment permits a warrantless search upon reasonable suspicion that a probationer is "engaging in criminal activity or otherwise violating the terms of his probation."). Specifically, Defendant had supplied

4

an incorrect address and had failed to contact Officer Perez for approximately thirty days, despite his supervision terms requiring him to "[r]eport as directed by the Court or probation officer" and to "permit the probation officer to visit the defendant at all times and places." (Ex. 3). Therefore, Officer Perez authorized and directed Detective Roskey to briefly detain Defendant for such noncompliance with his supervision terms. See *Brown*, 346 F.3d at 812 (finding it permissible for a probation officer to direct a law enforcement officer to conduct a warrantless search of a probationer). Detective Roskey detained Defendant for approximately fifteen to twenty-five minutes before Officer Perez arrived to take over the investigation related to Defendant's supervision. Considering the totality of the circumstances, the undersigned magistrate judge finds that Defendant's initial detention by Detective Roskey was reasonable, and that any evidence and statements derived from such detention do not need to be suppressed.

## II. Search of the Buick

Defendant argues that probation officers lacked probable cause and/or reasonable suspicion to conduct the warrantless search of the Buick, and that law enforcement officers in this case "used the probation officer as a 'stalking horse' in order to circumvent the Fourth Amendment." (Filing No. 16 at pp. 2-4). As discussed above, "when a probationer is subject to a probationary search condition, the Fourth Amendment permits an officer to search pursuant to that condition without a warrant based only upon that officer's reasonable suspicion that the probationer is violating his probation's terms." *Brown*, 346 F.3d at 811 (citing *Knights*, 534 U.S. at 121); *accord Rodriguez*, 829 F.3d at 961-62. The Eighth Circuit in *Rodriguez* approved of a warrantless search of a probationer's vehicle under similar circumstances as this case. The defendant in *Rodriguez* was serving a period of state-supervised probation imposed as part of his punishment for a state felony conviction. As a condition of his probation, the defendant expressly agreed to "submit [his] person, place of residence and vehicle, or any other property to which [he] may have access, to search and seizure at any time of day or night by a parole/probation officer, with or without a search warrant." *Rodriguez*, 829 F.3d at 961-62. The Eighth Circuit reasoned that the search condition "significantly diminished [the defendant's] reasonable expectation of privacy in his vehicle," such that "the Fourth Amendment required no more than reasonable suspicion that [the defendant] was engaging in criminal activity or otherwise violating the terms of his probation to justify the

5

warrantless search of his vehicle[.]" *Id.* at 962 (quoting *Knights* 534 U.S. at 120-21)(internal quotation marks omitted).

Similar to the probationer in *Rodriguez*, in this case Defendant expressly consented to the supervision term that he "[s]ubmit to random searches . . . of [his] . . . vehicle upon request of a probation officer or a law enforcement officer who has been authorized and directed by the probation officer." (Ex. 3). At the time Officer Perez conducted the search of the Buick, he had reasonable suspicion to believe that Defendant was engaging in criminal activity or was otherwise violating the terms of his supervision because Defendant had absconded from supervision for approximately thirty days. Further, Defendant was eventually located in a motel room during law enforcement's search for a fugitive with an active arrest warrant. Law enforcement had information from a reliable confidential informant that the fugitive had at one point been in the motel room where Defendant was found. Defendant's terms of supervision required him to "[a]void social contact with persons having criminal records . . . and not be present where illegal activity is taking place." (Ex. 3). Under the circumstances, the undersigned magistrate judge concludes that probation officers had reasonable suspicion to conduct the warrantless search of the Buick. See *Rodriguez,* 829 F.3d at 961-62.[2]

Independent of the post-release supervision search term, the warrantless search of the Buick was further permissible because Defendant voluntarily consented to the search. "To satisfy the Fourth Amendment's protection from unreasonable searches, 'the subject of a search [must have given] consent that was the product of an essentially free and unconstrained choice.'" *United States v. Correa*, 641 F.3d 961, 966 (8th Cir. 2011)(quoting *United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004)). Whether consent was voluntarily given is determined from the totality of the circumstances. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Factors for the court to consider include:

> personal characteristics of the defendant, such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the defendant and police preceding the consent, whether

---

[2] The Eighth Circuit has not yet decided whether a probation search solely predicated upon a condition of probation would be reasonable under the Fourth Amendment. See *Rodriguez*, 829 F.3d at 962 n.2 (quoting *Samson v. California,* 547 U.S. 843, 850 (2006)).

> the defendant was free to leave or was subject to restraint, and whether the defendant's contemporaneous reaction to the search was consistent with consent.

*United States v. Va Lerie*, 424 F.3d 694, 709 (8th Cir. 2005) (quoting *United States v. Jones*, 254 F.3d 692, 696 (8th Cir. 2001). "[T]he ultimate inquiry is not whether the defendant subjectively consented, but whether 'a reasonable officer would believe consent was given.'" *United States v. Rodriguez*, 834 F.3d 937, 940 (8th Cir. 2016)(quoting *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009)).

The undersigned magistrate judge finds that a reasonable officer would have believed Defendant voluntarily consented to the search of the Buick. Defendant was twenty-five years old and had a GED education. Additionally, Defendant's criminal history suggests he is experienced with contact with law enforcement. The record does not indicate that Defendant was under the influence of alcohol or drugs at the time he consented. Defendant also voluntarily permitted Officer Perez to retrieve the Buick's keys from his pocket for the search. Though Defendant was handcuffed at the time he consented, he had only been detained for a short period of time and was not formally arrested. Defendant was within view of the search of the Buick and made no statements or gestures in an attempt to revoke his consent or to otherwise indicate that he did not want a search to take place. Based on Defendant's conduct, a reasonable officer would believe that Defendant had voluntarily given consent to search the Buick. In consideration of the above, the undersigned magistrate judge concludes that the warrantless search of the Buick was permissible under the Fourth Amendment.

### III. Search of the Motel Room

Defendant argues the probation officers lacked probable cause and/or reasonable suspicion to conduct the warrantless search of the motel room. (Filing No. 16 at p. 2). First, the undersigned magistrate judge finds that Defendant did not meet his burden to establish that he has standing to challenge the search of the motel room. See *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir. 2015)(quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)("The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched."). The record does not establish that Defendant purchased the room or was an overnight guest. See

*United States v. Wright*, 844 F.3d 759, 762 (8th Cir. 2016). Instead, Defendant told officers he had arrived at the motel room late on June 26 or early on July 27, 2018, to tattoo one of the occupants of the room in exchange for money and methamphetamine. Defendant referred to the room as "party central" and described that people "were kind of coming in and out." (TR. 107). Defendant's mere presence in the motel room at the time officers arrived to execute an arrest warrant does not establish that he had a reasonable expectation of privacy in the motel room such that he has standing to challenge its search. Nevertheless, assuming *arguendo* that Defendant does have standing to challenge probation officers' search of the motel room, such search was permissible for the same reasons discussed above. Additionally, the record establishes that all of the room's occupants voluntarily consented to the search. Accordingly, any evidence obtained from the search of the motel room does not need to be suppressed.[3]

### IV. Statements

Finally, Defendant argues any incriminating statements he made should be suppressed as fruit of unlawful detention and searches. (TR. 133; Filing No. 15 at p. 3 ¶ 15). As discussed above, because Defendant's detention and the searches were not unlawful, the undersigned magistrate judge finds that any statements Defendant made as a result of such detention and searches are not fruit of the poisonous tree and do not need to be suppressed.

To the extent that Defendant argues that his supervising probation officer conducted a custodial interrogation without advising Defendant of his *Miranda* rights, (TR. 133-134), the undersigned magistrate judge finds that Defendant was not in custody for the firearm offense when he made statements to Officer Perez, and therefore *Miranda* warnings were not required. Although Defendant remained handcuffed during to Officer Perez's questioning, "Not all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Howes v. Fields*, ––– U.S. –––, 132 S.Ct. 1181, 1189 (2012). Officer Perez had directed law enforcement to detain Defendant

---

[3] Ultimately, the evidence obtained from the search of the motel room has little to no bearing on this case. Defendant is only charged with one count of being a felon in possession of a handgun. The handgun was recovered from the independent search of the Buick. Defendant is not charged with any drug crimes, and only drugs and drug paraphernalia were recovered from the motel room. Therefore, it is unclear what, if any, reason the government would have to offer evidence recovered from the motel room in this case.

8

pursuant to his supervision terms because Defendant had absconded. Officer Perez's questions and conduct were in furtherance of his duties as a probation officer, and were not in furtherance of a separate criminal investigation. Only after Officer Perez completed the tasks related to Defendant's supervision was Defendant formally arrested for the new offense. As such, Officer Perez was not required to provide Defendant with *Miranda* warnings, and Defendant's statements to Officer Perez do not need to be suppressed.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Robert F. Rossiter, Jr., that Defendant's Motion to Suppress Statements and Evidence (Filing No. 15) be denied.

Dated this 22nd day of May, 2019.

                                                  BY THE COURT:

                                                  s/ Michael D. Nelson
                                                  United States Magistrate Judge

**ADMONITION**

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.